**Melvin GANN, Petitioner,**

v.

**W. D. SMITH, Jr., Sheriff of Chickasaw County, Mississippi, Respondent.**

**No. EC 7044–K.**

United States District Court,
N. D. Mississippi, E. D.

Oct. 29, 1970.

**410**

John P. Fox, Houston, Miss., James A. Lewis, Oxford, Miss., for petitioner.

Guy N. Rogers, Asst. Atty. Gen., Jackson, Miss., James S. Gore, County Atty., Houston, Miss., for respondent.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This petition for writ of habeas corpus is brought by Melvin Evans Gann under 28 U.S.C. § 2241. Petitioner, presently on bond, attacks his conviction and sentence by the Circuit Court of Chickasaw County, Mississippi, on the ground that certain evidence introduced against him at trial was obtained under a search warrant based upon an invalid affidavit and also that the Circuit Court increased his sentence after a trial de novo following an appeal from his initial conviction in Justice of the Peace Court. After response to the petition by the State of Mississippi, briefing by counsel and submission by stipulation of the state court record, the case is now before the court for decision on the merits, without necessity of a further evidentiary hearing.

The facts, as revealed by the record, are as follows: Shortly after noon on August 31, 1968, agent Keith Roberts of the Mississippi Alcoholic Beverage Control Board (ABC) made an affidavit charging petitioner with keeping intoxicating liquors at his home for unlawful purposes. Relying on Roberts' affidavit, the Justice of the Peace for Chickasaw County, District #1, issued his warrant authorizing a search of petitioner's premises. About 4 p.m. that afternoon ABC agents Roberts, Shanks, Braswell, Greer and Floyd proceeded to petitioner's house, after having first raided several other suspected bootleggers. From their automobile the agents observed a man walking away from a side window of petitioner's house carrying two cans of beer. While one agent spoke to that man, the other agents scattered out around the house, noticing a padlock on the front door and a sign taped thereto which read: "No Beer". The agents announced their presence and purpose at the front door, back door and side window. Hearing no reply, agent Shanks kicked in the front door. The agents entered the house, and when Roberts saw petitioner emerge from the bathroom, he

served him with a search warrant in a hallway near the kitchen. Roberts then searched a refrigerator by the side window which he found to be filled with beer. Another agent discovered more beer in a second refrigerator in the kitchen. The agents then placed petitioner under arrest and seized 102 sixteen-ounce cans of assorted brands of beer, all of which had Mississippi tax-paid stamps affixed. The seized beer was removed to Pontotoc where it was destroyed, except for the six-pack of Schlitz later introduced as evidence. Under local option law, beer has been outlawed in District #2, Chickasaw County, and merely possessing it is a crime.

On September 17, 1968, in Justice of the Peace Court, petitioner was tried, convicted and fined $500 for unlawful possession of beer. A timely appeal was taken to the Circuit Court, entitling him to a trial de novo. At that trial his counsel objected to the introduction of the affidavit and search warrant, which objection was overruled. Then without further objection the three agents testified as to the beer they had found in petitioner's residence and offered into evidence 1 six-pack. At the close of the prosecution's case, defendant moved to exclude the State's evidence on the ground of his objections to the introduction of the affidavit for search warrant and the search warrant itself, as "not in proper form." This motion was overruled. Again at the conclusion of his own case, defendant moved for a directed verdict, which was denied. Following a jury verdict of guilty, the court sentenced him to pay a $500 fine and serve 90 days in jail with 60 days to be "held up pending good behavior." Petitioner moved for a new trial, which was denied, and appealed to the State Supreme Court, asserting that the affidavit for search warrant was invalid and that the prosecution had failed to prove that the

alcoholic content of the beer exceeded 4% as required by state statutes and the local option liquor election of Chickasaw County, District #2.[1]

The Supreme Court of Mississippi affirmed the conviction, holding that proof of the beer's alcoholic content was unnecessary since the local option election in Chickasaw County had failed, and that, therefore, the general statute outlawing all alcoholic beverages regardless of percentage of alcohol was applicable.[2] The Court also held that petitioner had waived his objections to the affidavit and the fruits of the search by taking the stand and admitting possession of the beer and claiming that he kept it only for medicinal purposes, as prescribed by his chiropractor, whose testimony was disallowed by the trial court as not that of a qualified physician. Gann v. State, supra, at 628.

Petitioner moved for rehearing, asserting for the first time that the Circuit Court had unlawfully increased his sentence after appeal. When the Supreme Court denied rehearing, petitioner sought state post-conviction review under Miss. Code Ann. § 1992.5. After denial of such relief, petitioner then instituted in federal court his present petition for writ of habeas corpus.

This court has jurisdiction under 28 U.S.C. § 2241. Petitioner has sufficiently exhausted his state-court remedies.[3] We consider first the validity of the search, seizure and arrest, because if petitioner's contentions as to that point are upheld, the state conviction cannot stand. The initial inquiry relates to whether petitioner is precluded from presenting his Fourth Amendment claims by having failed to object to the testimony of the agents and the introduction of a six-pack carton of beer, when offered at the state trial, after his objections made to the affidavit for search warrant and warrant

---

1. Miss.Code Ann. §§ 2613, 3239 and 10208 (a).

2. Gann v. State, 234 So.2d 627, 628 (Miss. 1970).

3. 28 U.S.C. § 2254; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Murray v. Florida, 410 F.2d 393 (5 Cir. 1969).

had been overruled. The state also suggests that petitioner affirmatively waived any claim of illegal search and seizure by his taking the stand and admitting possession of the beer.

Normally, objections to the admissibility of evidence must be made when the evidence is offered, and must set forth with specificity the reason for the objection so that the trial judge may have the opportunity to rule on them, and if counsel fails to make a timely and specific objection, the point is *waived* and may not be raised on appeal.[4] The right to exclude evidence which may have been obtained in violation of a defendant's constitutional rights, however, is not so easily waived by procedural default. In determining whether there has been waiver of a right guaranteed by the federal constitution, federal standards govern,[5] and those standards are highly restrictive, courts having stated that waiver of a constitutional right must be narrowly construed, will not be lightly inferred, and that courts will indulge every reasonable presumption against such waiver.[6] The waiver must be an intentional relinquishment of a known right or privilege.[7] Although constitutional rights may be waived by conscious decisions of trial strategy and under reasonable procedural regulations,[8] the burden of proving such waiver rests always with the state.[9] Under federal standards, where evidence challenged on constitutional grounds is material, has

substantial evidentiary significance and is not merely cumulative, its admission may be attacked on federal habeas corpus even in the absence of any objection at trial.[10] As Chief Judge Brown has stated, however, not every procedural error in the admission of illegally obtained evidence is reviewable, but only those cases in which the evidence is highly significant and virtually crucial to the defendant's case, and where there is shown some complicity of the prosecution or police in obtaining it:

"  *  *  *  [F]or an otherwise valid state conviction to be upset,  *  *  *  surely something more than an evidentiary mistake must be shown. If mistake is enough, then never, simply never, will the process of repeated, prolonged, postconviction review cease. For in every trial, or at least nearly every trial, there will be, there are bound to be, some mistakes. What elevates the 'mistake' to a constitutional plane is at least twofold. First, the mistake must be material in the sense of a crucial, critical, highly significant factor. Second, it must have some State complicity in it." (Concurring specially in Luna v. Beto, 395 F.2d 35 at 40, 41 (5 Cir., en banc, 1968).

In the *Mize* and *Pope* cases, supra, the Eighth and Tenth Circuits held that even where no objection at all was interposed at trial to the admission of the fruits of an unconstitutional search and seizure, the point was not waived unless the rec-

---

4. 1 Wigmore on Evidence § 18. Mississippi has long followed this rule, commonly known as the "contemporaneous objection" rule. Henry v. State, 198 So.2d 213 (Miss.1967).

5. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

6. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Molignaro v. Smith, 408 F.2d 795 (5 Cir. 1969); Williams v. Alabama, 341 F.2d 777 (5 Cir. 1965); Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955).

7. Johnson v. Zerbst, supra; Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

8. Zerschausky v. Beto, 396 F.2d 356 (5 Cir. 1968); Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); Henry v. Williams, infra.

9. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

10. Henry v. Mississippi, supra; Mize v. v. Crouse, 399 F.2d 593 (10 Cir. 1968); Pope v. Swenson, 395 F.2d 321 (8 Cir. 1968); Henry v. Williams, 299 F.Supp. 36 (N.D.Miss.1969).

**413**

ord showed a knowing and deliberate by-pass and forfeiture of defendant's constitutional objections to the evidence as a matter of trial strategy. In the case at bar there is no indication whatsoever of any intention by petitioner or his counsel to waive constitutional objections to the affidavit, warrant and fruits thereof. Petitioner's trial counsel objected to the introduction of the affidavit and warrant themselves, renewing his objection at the close of the prosecution's evidence and after presenting his defense. Although he failed to state that he objected to the affidavit and warrant on Fourth Amendment grounds, and failed to object at all to the officers' testimony based thereon, there is nothing in the record indicating any intention to waive the right to object on those grounds. It is equally clear that the points were highly significant, since without the affidavit, warrant and their fruits, the state had no evidence whatsoever against petitioner.

▮ The evidence in the present case also convinces us that neither petitioner nor his counsel had any intention of waiving his constitutionally-based objections to the affidavit, search and seizure in question by putting defendant on the stand. Even after petitioner had taken the stand and admitted possession of the beer, his counsel requested a peremptory instruction on the ground that the State's evidence was inadmissible as the product of an invalid affidavit. In several cases similar to the present one, the Supreme Court has held that by voluntarily testifying a defendant does not necessarily waive his constitutional objections to prosecution evidence. In Lee v. Mississippi, 332 U.S. 742, 68 S.Ct. 300, 92 L.Ed. 330 (1948), a 17 year-old defendant took the stand and denied ever having made a confession after first objecting to the introduction of a confession by the prosecution on the ground that it was obtained by coercion. The Supreme Court held that even though his testimony sharply contradicted with the ground of his objection, his testimony was not a waiver of his objection, and reversed his conviction on that ground. In Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), defendant objected to the introduction of any evidence as to his failure to pay federal import tax on marijuana, claiming that to have done so would have been self-incriminatory. He later took the stand and admitted not having paid the tax, which the government argued was a waiver. The Supreme Court held that his admission was consistent with his contention that the tax was self-incriminatory, and that he had not, therefore, waived his objections. In the case at bar, petitioner's admission that he actually possessed the beer is wholly consistent with his contention that the ABC agents unlawfully searched his house and seized his beer under an invalid affidavit, and in no way intimates any intention of petitioner to waive his objections to the search.

In Harrison v. United States, Fn. 9 supra, the Supreme Court held that where a defendant testifies after the prosecution has introduced illegally obtained evidence, the burden is on the prosecution to prove that the illegal evidence did not induce the defendant to testify. This "fruit of the poisonous tree" reasoning is equally applicable to the case at bar. It is apparent that nearly all of the evidence introduced by the State was the direct product of the affidavit and warrant here challenged. Without them the State would have had no evidence to present, and petitioner would have had no reason to testify. We conclude, therefore, that petitioner did not waive his right to object to the evidence introduced by the State. This brings us directly to a consideration of the validity of the affidavit upon which the search warrant was based.

The Fourth Amendment to the Constitution of the United States requires that no search warrants shall issue except upon probable cause.[11] As construed

11. "The right of the people to be secure in their person, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants

by the courts, the language of the Fourth Amendment means that no search warrants may issue unless an affidavit is filed with a neutral and detached magistrate; and the affidavit must contain underlying facts and circumstances sufficient to enable the magistrate to determine as a matter of fact that there is "probable cause" for issuance of the warrant.[12] The requirement of "probable cause" is made applicable to the states by the Fourteenth Amendment. *Aguilar*, supra.

The affidavit here in question, after specifically describing the premises to be searched and the contraband expected to be found, sets out the following:

"Information has been received from a confidential informer, who is a true and reliable person because several things he has told to the affiants in the past have checked out to be the truth, that beer and whiskey was being stored, kept, and controlled, for the purpose of sale at the above said place. On *Feb. 8, 1968*, Melvin Gann, agreed to pay a fine of $227.00 on all the charges that the ABC division had against him; possession of beer and whiskey on several counts. Also, in the past an ABC agent, through an informer, has purchased beer from subject, with the agent as an eye witness. On *June 21, 1968*, Gann was charged with possession of beer (16 cans). On *Jan. 26, 1968*, Gann was charged with possession of beer (1¾ of a case). Affiants are still receiving complaints on said subject." (Note: The affidavit purports to be made by agents Roberts and Shanks, but is signed by Roberts only; see R. 2).

■ Stripped to its essentials, the foregoing affidavit relies on three things: (1) information of an anonymous informer who had told the affiant several unspecified "things" in the past

which had proved to be true; (2) affiant's personal and hearsay knowledge of similar past offenses by petitioner; and (3) affiant's bald statement, unsupported by facts or circumstances, that affiant and others "are still receiving complaints" about petitioner. The affidavit does not disclose any of the underlying facts or circumstances causing the anonymous informer to believe that petitioner had beer and whiskey at his residence, or whether the informer's belief was based upon personal knowledge or hearsay. Nor does the affidavit specify any facts on which the recurring complaints were based. Thus, the Justice of Peace was unable to make his own independent review of the facts to determine probable cause—the constitutional requisite of the Fourth Amendment. Similar affidavits have frequently been held invalid by both the Supreme Court of the United States and the Supreme Court of Mississippi.[13] In *Aguilar,* the search warrant was based on the affidavit of two police officers that they had:

" * * * received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law." (378 U. S. at 109, 84 S.Ct. at 1511).

In *Aguilar* the Supreme Court held the foregoing affidavit insufficient to establish "probable cause." The *Aguilar* court articulated the "probable cause" standard as two-fold where the affidavit contains no information based on the affiant's personal knowledge, but only hearsay information: (1) the affiant must state the reason why he believed what the informer said was true; and (2) the affiant must give the source of the informer's information as the informer

---

shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

12. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

13. Aguilar v. Texas, supra; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); O'Bean v. State, 184 So.2d 635 (Miss.1966); Walker v. State, 192 So.2d 270 (Miss.1966).

expressed it to the affiant. The *Aguilar* affidavit, quoted above, failed to meet either requirement since it did not state why the affiant believed the anonymous informer was telling the truth and also failed to state the source of the informer's information, whether personal observation, hearsay or mere suspicion. The affidavit in the case at bar meets the first *Aguilar* requirement by the affiant's statement that the informer has previously given information to the affiant which proved to be true, thereby showing why the affiant believed the informer to be reliable. The affidavit wholly fails to meet the second *Aguilar* test, however, because it gives no indication whatever of the source of the informer's belief that petitioner was possessing beer or whiskey. For all the Justice of the Peace could have known these statements might have been based upon pure suspicion and conjecture, there being no underlying facts or circumstances revealed by the affidavit to show on what the informer relied in forming his beliefs as to petitioner's illegal conduct. For that reason we hold that the present affidavit is invalid for failure to show any underlying facts or circumstances sufficient to meet the probable cause test. The same reasoning applies to the complaints affiant here claims to be receiving; nothing in the affidavit shows any facts the complainants relied on in forming their suspicions that petitioner possessed and was selling beer. The mere fact that petitioner had a prior record of like offenses is insufficient corroboration for an affidavit totally unsupported by any factual basis.

The excellent opinion of Judge Thornberry,[14] cited by the State, in which he gives a carefully-reasoned analysis of the applications of the *Aguilar* and *Spinelli* standards, is inapposite here because that opinion dealt with affidavits made partly upon personal knowledge of the affiant police officer based on police surveillance of the accused, which was not the situation in the case sub judice.

In *O'Bean*, the Mississippi Supreme Court held invalid an affidavit conclusory in nature and quite similar to the one which we have here found to be defective. Mr. Justice Patterson, speaking for the Court, said:

> "The standard required by *Aguilar*, which we are obliged to follow, is that an affidavit seeking a search warrant, though it may be based on hearsay information and need not reflect the direct personal observations of the affiant, *must contain some of the underlying facts or circumstances from which a detached and neutral judge can fairly ascertain that probable cause does exist for the issuance of the warrant.*" (Emphasis added). 184 So.2d 635, 638.

We also note that the search of petitioner's house cannot be upheld as a warrantless search incident to a lawful arrest, since the testimony was clear that petitioner was not placed under arrest until after the search was made. The record is silent as to whether the unidentified man seen leaving the side window with two cans of beer was ever arrested, so the search could not have been incident to his arrest.

Because we hold the affidavit and search warrant were invalid and the search may not be upheld as incident to a lawful arrest, it follows that the state trial court erred in not excluding all evidence obtained by the ABC agents from their search of petitioner's house, as violative of his Fourth Amendment rights. Having so ruled, we find it unnecessary to consider the additional question raised by petitioner concerning the constitutionality of the imposition of an increased sentence at a Circuit Court trial de novo following an appeal from Justice of the Peace Court.

An order shall be entered granting the writ of habeas corpus, setting aside the State conviction, but without prejudice to the State's reprosecution for the offense within four months from this date.

14. Gonzalez v. Beto, 425 F.2d 963, 5 Cir. 1970.