RODGERS, Presiding Justice.
On January 12, 1974, two young Negro men entered a “Mr. Quick” food store in Clarksdale, Mississippi, and robbed the persons in charge by the use.of a rifle and a pistol. The city police were notified, and they immediately appeared at the store in time to see and chase one of the robbers, but both robbers escaped.
The police suspected that one of the robbers was Alfonso Ratliff. They had a warrant for his arrest because of a previous charge. They went to his home and saw Ratliff climbing out of a window. He was apprehended, and at the time of his arrest, he was wearing a green hat. The officer had been informed that one of the robbers was wearing a green hat and a tan coat.
A detective captain questioned the witnesses at the “Mr. Quick” food store and the officers who came to the scene of the crime, including the officer who chased the fleeing robber. One of the persons interviewed advised the detective captain that he had seen Alfonso Ratliff wearing a tan coat and green hat before the robbery occurred. This witness thought the robber in *906 the tan coat and green hat was Alfonso Ratliff because of his mannerisms: the way he walked and the way he handled the gun. The second robber had a mask on his face, and it was impossible to positively identify him. Having secured this information, the detective captain filed an affidavit with Judge Wright requesting a search warrant. The underlying facts shown in the affidavit are appended hereto as Appendix No. 1. A search warrant was issued by the justice of the peace and a search made of the house described in the search warrant. The officers found a .22 caliber rifle with tape on the handle, and a tan topcoat, previously described to the officers by witnesses at the scene of the robbery. The officers did not take the topcoat at this time because a brother of the defendant claimed the coat.
Later — one Nathan Kern admitted that he took part in the robbery and told the officers that the appellant Ratliff furnished the guns used to commit the robbery. Whereupon, a second affidavit was made requesting a search warrant of the premises previously searched in an effort to find the pistol. On this occasion, a pistol was found similar to the one described by the persons at the scene of the robbery. A copy of the underlying facts is appended hereto as Appendix No. 2. This affidavit was made before the county judge. The coat previously claimed by defendant’s brother was also seized by the officers.
The defendant was found guilty by a jury in the Circuit Court of Coahoma County, Mississippi, on á charge of armed robbery, and was sentenced to serve a term of twelve (12) years in the state penitentiary.
The defendant has appealed to this Court and now contends that the search of his home was illegal, and that the introduction of the articles seized by the officers and given in evidence against him on the trial was illegal.
Appellant Ratliff objects to the evidence upon the specific ground that the two affidavits do not meet the two-part test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), nor our test set out in O’Bean v. State, 184 So.2d 635 (Miss.1966). We stated in O’Bean that for an affidavit to be sufficient to meet fourth amendment standards, the informant or the affiant must have reasonable information or cause to believe that the items sought pursuant to the search warrant are located on the premises to be searched; and, further, that if the information which the affiant uses for the basis of his probable cause for a search warrant was obtained from an informant, there must be underlying facts and circumstances alleged which would show the independent magistrate that the informant was reliable and that his information was reasonably trustworthy.
An examination of the record in this case convinces us that the underlying facts presented to the justice of the peace and later to the county judge are ample to show probable cause for the issuance of a search warrant, particularly since the information received by the affiant was given by a fellow officer involved in the investigation.
In the case of Strode v. State, 231 So.2d 779 (Miss.1970), this Court reexamined Aguilar v. Texas, supra, and O’Bean v. State, supra, as well as many other cases and two fine articles in law reviews. We reached the following conclusion in Strode:
“Further, the officers had probable cause sufficient to support the application for the search warrant. Probable cause exists when a police officer has personal knowledge and reasonably trustworthy reports of facts which are sufficient to warrant a reasonably cautious man’s believing an offense has been or is being committed. The application for search warrant complies fully with the requirements of decisions of the United States Supreme Court and of this Court.” 231 So.2d at 782.
*907 We also made the following observation:
“The two-part test of Aguilar requires a magistrate to be informed of (1) some of the underlying circumstances from which the informer concluded that the defendant was the one guilty of the offense, and (2) some of the underlying circumstances from which the officer concluded that the informer was credible or his information reliable. In short, under the basis-of-knowledge test, the informer must have obtained his knowledge by personal observation, or in some other dependable manner rather than through casual rumor. The second reliability test is an attempt to guard against tips provided by untruthful or unreliable informers, and suggests that an informer is credible if he has provided truthful tips in the past. Moreover, the information may be deemed reliable if corroborated by independent investigation. Both tests require only that some of the underlying circumstances be sworn to. Furthermore, in Spinelli, the Court i: ii-cated that the basis-of-knowledge test could be fulfilled without a statement of the circumstances from which the informer derived his information; i. e., if a tip is sufficiently detailed, it may be self-verifying, and one may conclude that the informer was not relying on mere rumor.” 231 So.2d at 783.
We think that the statements made to show probable cause are clear and were sufficient to authorize the issuance of the two search warrants, and that the articles obtained by the search were admissible in evidence.
The judgment of the trial court is therefore affirmed.
Affirmed.
GILLESPIE, C. J., and PATTERSON, SMITH, ROBERTSON, SUGG, and BROOM, JJ., concur.
APPENDIX NO. 1
UNDERLYING FACTS AND CIRCUMSTANCES OF ARMED ROBBERY COMMITTED AT MR. QUICK ON FOURTH STREET JANUARY 12, 1974 AT APPROXIMATELY 2:25 A.M.
An investigation was held by Officers of the Clarksdale Police Department in connection with the above listed robbery and the following information was learned;
After the robbery several witnesses were interviewed and one. of them stated one of the suspect’s [sic] looked like Alfonso Ratliff, who lives at 1609 Sommers in the City of Clarksdale. Officers had a warrant on file for the arrest of Ratliff for disturbing the peace and went to the above address to serve the warrant. When Officers went to Ratliff’s home, he jumped out the window in an attempt to escape, but was caught and arrested. At the time of his arrest he was wearing clothing that fit the description the witnesses gave at the time of the robbery.
Due to the description of the suspect’s [sic] and the past record of Alfonso Rat-tiff it is of the opinion that this suspect committed this armed robbery and that the weapon’s [sic] used are located in this suspect’s home located at 1609 Sommers Avenue.
All of the above facts are true and correct.
/s/ Timmy Carslev
Jimmy Carsley
Detective Captain
Clarksdale Police Department
APPENDIX NO. 2
UNDERLYING FACTS AND CIRCUMSTANCES
The affiant, Charles Reynolds, has been informed that the pistol that was used in the armed robbery of the Mr. Quick Gro. was taken and left at Alfonzo Ratliff Jr.’s residence at 1609 Sommers Street Clarks- *908 dale, Miss. The top-coat and other items of clothing worn by the suspect, Alfonza Ratliff Jr. were left at this house, also.
This information was furnished to the af-fiant in a statement made by the co-defendant, Nathan Kern, who readily admitted that he and Alfonzo Ratliff Jr. committed the armed robbery and that Alfonzo Ratliff Jr. furnished the guns and after the crime was committed that they split the money and Alfonzo Ratliff Jr. took his part of the money and the guns back to his residence at 1609 Sommers St.
The affiant prays that based on this information that a search warrant be issued and that Alfonzo Ratliff Jr.’s residence at 1609 Sommers be searched to locate and bring in the pistol and items of clothing worn by the suspect and described by the witness.
/s/ Charles Reynolds
Affiant